[Cite as *State v. Asadi-Ousley*, 2017-Ohio-7252.]
[Please see vacated opinion at 2017-Ohio-2652.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 104267**

---

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# ASA J. ASADI-OUSLEY

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-597885-A

**BEFORE:** E.T. Gallagher, J., Jones, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** August 17, 2017

**ATTORNEY FOR APPELLANT**

Britta M. Barthol
P.O. Box 670218
Northfield, Ohio 44067


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY:    Mary Weston
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

ON RECONSIDERATION[1]

EILEEN T. GALLAGHER, J.:

{¶1} Defendant-appellant, Asa J. Asadi-Ousley ("Asadi-Ousley"), appeals his convictions and sentence for rape, felonious assault, kidnapping, and his sexually violent predator conviction. He raises the following assignments of error for review:

> 1. The trial court erred in failing to grant trial counsel's motion to continue trial.
>
> 2. The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that [Asadi-Ousley] was guilty of the sexually violent predator specification attached to [Counts 1, 2, and 7] of the indictment.
>
> 3. [Asadi-Ousley's] convictions for rape, felonious assault, kidnapping, and the sexual predator specification were against the weight of the evidence.
>
> 4. The trial court erred when it failed to merge the sentences imposed in [Counts 1, 2, and 7] as they are allied offenses of similar import.
>
> 5. [Asadi-Ousley] was denied his right to effective assistance of counsel guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution when his attorney failed to argue that [Asadi-Ousley's] convictions for rape, felonious assault, and kidnapping were allied offenses of similar import.

{¶2} After careful review of the record and relevant case law, we affirm Asadi-Ousley's convictions and sentence.

---

[1] The original decision in this appeal, *State v. Asadi-Ousley*, 8th Dist. Cuyahoga No. 104267, 2017-Ohio-2652, released May 4, 2017, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 22(C); *see also* S.Ct.Prac.R. 7.01.

## I. Procedural and Factual History

{¶3} In July 2015, Asadi-Ousley was charged in a seven-count indictment. Counts 1 and 2 charged him with rape, and each count carried a sexually violent predator specification. Counts 3 and 4 charged him with aggravated robbery. Count 5 charged him with felonious assault, and Counts 6 and 7 charged him with kidnapping.

{¶4} The matter proceeded to a jury trial, at which the following evidence was adduced.[2]

{¶5} Sometime around October 2008, T.M. moved from Huron, Ohio, to Cleveland to live with her boyfriend and his father. They lived in a duplex near the intersection of East 140th Street and Kinsman in Cleveland. T.M. had never lived in Cleveland and was unfamiliar with the neighborhood. On December 31, 2008, T.M. decided to spend New Year's Eve with some friends she recently made. T.M. testified that she had consumed two alcoholic drinks and smoked some marijuana with her friends. Around 10:30 p.m., one of her friends drove her home so she could watch the New Year's festivities on television with her boyfriend. When she arrived, however, her boyfriend and his father were not home. The apartment did not have a phone so T.M. could not call anyone. Since no one was home, T.M. decided to walk to the corner store to buy some beer to drink while she watched the ball drop in Times Square on television. T.M. walked to the store around 10:45 p.m. and bought a can of beer. As she was

---

[2] The sexually violent predator specification was tried before the bench. At the conclusion of trial, the court found Asadi-Ousley guilty of the specification.

walking back home, a man grabbed her from behind and held a knife against her neck. He told her not to scream or he would kill her. T.M. testified that she believed she heard two voices. The attacker covered her mouth with his hand. T.M. testified that she never observed her attacker's face because he approached her from behind. With the knife held to her neck, the attacker pushed T.M., forcing her into an alleyway. The attacker then struck T.M. in the back of her head and she lost consciousness. T.M. referred to the alley as "the cut." She described it as an area between a house and a building.

{¶6} T.M. awoke to find herself on the ground in the alley, her lip and nose were bleeding, her vagina was sore, and her head hurt. Her shirt was ripped open and her pants and underwear were pulled down. She testified that she realized that she had been raped. Her can of beer and three dollars in change were gone. T.M. walked out of the alleyway and headed back home. She called her boyfriend from a payphone on her way back, but her attempt to reach him was unsuccessful. A boy she recognized from the neighborhood saw her walking and helped her make it back home. When T.M. arrived home, the house was still empty.[3] She laid in bed and cried. T.M. testified that she had suffered from depression when she was a teenager. She stayed in bed until the morning of January 3, 2009, when she went to her neighbor's house and called her boyfriend and her mother, J.H. She told them what had happened. T.M.'s mother and boyfriend both

---

[3] T.M. testified that her boyfriend did not return home until after she was discharged from the hospital. T.M. testified that it was not unusual for her boyfriend to be away for long periods of time because he did not drive and did not have money for bus fare.

advised her to go the hospital. J.H. testified that she remembered getting the phone call from T.M. She still remembers that phone call because of how distraught T.M. sounded. T.M. was scared and crying hysterically.

{¶7} T.M. then called an ambulance and was transported to the hospital. She brought the clothes she wore on the night of the attack with her to the hospital. T.M. spoke with police officers at the hospital, and a nurse performed a sexual assault kit on T.M.

{¶8} Sexual Assault Nurse Examiner Deanna Johnson ("Nurse Johnson") performed T.M.'s examination. Nurse Johnson testified that T.M. had vaginal pain and bleeding and was crying during the examination. Nurse Johnson further testified that T.M. disclosed she had been raped vaginally by strangers, one of whom had a knife, and had been struck in the head and lost consciousness. Nurse Johnson observed a scratch on T.M.'s neck consistent with T.M.'s report of having a knife held to her neck. Nurse Johnson collected samples for the sexual assault kit and collected T.M.'s clothing.

{¶9} Cleveland Police Officer Jenae Treece ("Officer Treece") responded to the report of T.M.'s rape and spoke to T.M. at the hospital. T.M. told her that one or possibly two suspects were involved in the attack, one of which had a knife. Officer Treece testified that T.M. had a scratch on her neck consistent with a knife being held there. No suspect was identified during her investigation. Officer Treece described the area where T.M. was attacked as being between East 139th Street and East 140th Street, behind a beauty supply store.

{¶10} T.M. moved to West Virginia after the incident. Almost seven years later, sometime in 2015, Cleveland police contacted T.M. The officers had her look at some photographs to identify her attacker, but she was unable to do so because she never saw his face. T.M. could not identify Asadi-Ousley at trial as her attacker.

{¶11} Jade McDaniel, a forensic scientist employed with the Ohio Bureau of Criminal Investigation ("BCI") testified that T.M.'s sexual assault kit was delivered to the BCI lab on March 19, 2014, for DNA testing. She performed the DNA testing in this case. The vaginal samples revealed a mixture of DNA profiles consisting of T.M. and an unknown male. A sample from T.M.'s underwear had a mixture of DNA profiles consistent with T.M.'s and an unknown male.

{¶12} On March 6, 2015, the lab received a DNA sample from Asadi-Ousley. McDaniel compared Asadi-Ousley's DNA sample with the samples in the kit. McDaniel testified that Asadi-Ousley's DNA was found in T.M.'s vaginal samples and on T.M.'s underwear.

{¶13} At the conclusion of trial, the jury found Asadi-Ousley guilty of both rape counts, felonious assault, and both kidnapping counts. At sentencing, the trial court merged the rape counts into one count (Count 2) and merged the kidnapping counts into one count (Count 7). The trial court sentenced Asadi-Ousley to 15 years to life in prison on each of Counts 2 and 7 and eight years in prison on Count 5. The court ordered that the sentences be served concurrently for an aggregate of 15 years to life in prison.

**A. Motion to Continue**

**{¶14}** In his first assignment of error, Asadi-Ousley argues the trial court erred when it did not grant his December 29, 2015 motion to continue trial.

**{¶15}** The decision to grant or deny a motion to continue trial is left to the broad and sound discretion of the trial judge, and an appellate court may not disturb the trial court's ruling absent an abuse of discretion. *Cleveland v. Washington*, 8th Dist. Cuyahoga Nos. 97945 and 97946, 2013-Ohio-367, ¶ 11, citing *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981). "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." (Citations omitted.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).

**{¶16}** A reviewing court determines on a case-by-case basis whether the trial court's denial of a continuance motion was so arbitrary as to deprive the defendant of due process, paying particular attention to the reasons presented to the trial judge at the time the request was denied. *Unger* at 67. In determining whether the trial court abused its discretion, an appellate court weighs "any potential prejudice to a defendant [against] concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *Id.* The *Unger* court stated:

> In evaluating a motion for a continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a

continuance; and other relevant factors, depending on the unique facts of each case. *See United States v. Burton*, supra; *Giacalone v. Lucas*, supra.

*Id.* at 67-68.

**{¶17}** In this case, Asadi-Ousley had an initial trial date of October 28, 2015. On October 12, 2015, Asadi-Ousley filed a motion to continue the trial date. The trial court granted this motion and set a new trial date of December 2, 2015. On November 29, 2015, Asadi-Ousley filed his second motion to continue trial because defense counsel had not fully recovered from eye surgery on his right eye and had eye surgery scheduled for his left eye on December 4, 2015. Within the motion, defense counsel anticipated he would need 30 days to recover. The trial court granted Asadi-Ousley's motion to continue the second trial date and set a trial date of January 4, 2016. Then on December 29, 2015, Asadi-Ousley filed a third motion to continue trial because defense counsel had not fully recovered from the December 4, 2015 surgery. On January 4, 2016, the trial court addressed Asadi-Ousley's third motion on the record as follows:

> THE COURT: [defense counsel], you made a motion to continue the trial once again based on your eyesight once again, is that correct?
>
> [DEFENSE COUNSEL]: That's correct, Your Honor.
>
> THE COURT: We talked about this outside of the presence of the court reporter off the record and you correct me if I'm wrong, [defense counsel], I believe you indicated you could start today, that you are having trouble seeing and you sometimes need a magnifier or magnifying glass?
>
> [DEFENSE COUNSEL]: I'm using my eyeglasses today. I'm improving all the time, I'm just not all the way back.
>
> THE COURT: So what we had discussed outside of your client's presence and not on the record was that I would tell the jury at the beginning when I

introduce you that you did have this recent cataract surgery and your eyesight is not 100 percent, so if you seem unsure or unsteady on your feet or it takes you awhile to read something, that's because of your surgery and not to make any inference.

[DEFENSE COUNSEL]: That is correct.

THE COURT: Would that be sufficient for you, [defense counsel]?

[DEFENSE COUNSEL]: Yes. I just have the depth perception problem. I may reach for something that's a little bit further than it appears, so I'm sometimes unsteady on my feet.

THE COURT: So I'll make my remarks, but certainly feel free to say what you would like to say about the situation during the course of your voir dire to the jurors.

[DEFENSE COUNSEL]: Your Honor, I fully discussed everything with

my client and I'm — we are prepared to go forward.

{¶18} The court denied the motion and Asadi-Ousley went forward with trial.

**{¶19}** A review of this record reveals that Asadi-Ousley's defense counsel affirmatively waived Asadi-Ousley's third motion to continue on the day of trial when he told the trial court that they were, in fact, prepared to go forward that day. Moreover, when applying the *Unger* factors to the instant case, we cannot conclude that the trial court's denial of Asadi-Ousley's third continuance was unreasonable. The trial court continued trial on two prior occasions at Asadi-Ousley's request, and the multiple court dates caused inconvenience to the state's witnesses who had to travel to Cuyahoga County to testify (T.M. traveled from West Virginia, J.H. traveled from Huron, Ohio, and McDaniel traveled from Richfield, Ohio). The trial court held a brief hearing and inquired in depth of the continuance request. Given these facts, we cannot say that the trial court's decision to deny Asadi-Ousley's third motion for continuance was unreasonable, arbitrary, or unconscionable.

**{¶20}** Therefore, the first assignment of error is overruled.

### B. Sufficiency of the Evidence

**{¶21}** In his second assignment of error, Asadi-Ousley argues there is insufficient evidence to support a finding that he is a sexually violent predator.

**{¶22}** In *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 113, the Ohio Supreme Court explained the standard for sufficiency of the evidence as follows:

> Raising the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law invokes a due process concern. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. In reviewing such a challenge, "[t]he relevant inquiry is whether, after viewing

the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**{¶23}** We are mindful that in considering the sufficiency of evidence a certain perspective is required. *State v. Eley*, 56 Ohio St.2d 169, 172, 383 N.E.2d 132 (1978). "This court's examination of the record at trial is limited to a determination of whether there was evidence presented, 'which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *Id.*, quoting *Atkins v. State*, 115 Ohio St. 542, 546, 155 N.E. 189 (1926). It is the minds of the trier of fact, rather than a reviewing court, that must be convinced. *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982).

**{¶24}** In the instant case, the trial court found Asadi-Ousley guilty of the sexually violent predator specification as set forth in R.C. 2971.01(H)(1), which defines a "sexually violent predator" as "a person who, on or after January l, l997, commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." R.C. 2971.01(H)(2)(a)-(f) lists the factors that may be considered by the factfinder as evidence tending to indicate that there is a likelihood that the person will engage in the future in one or more sexually violent offenses. It provides:

> (a) The person has been convicted two or more times, in separate criminal actions, of a sexually oriented offense or a child-victim oriented offense. For purposes of this division, convictions that result from or are connected with the same act or result from offenses committed at the same time are one conviction, and a conviction set aside pursuant to law is not a conviction.

(b) The person has a documented history from childhood, into the juvenile developmental years, that exhibits sexually deviant behavior.

(c) Available information or evidence suggests that the person chronically commits offenses with a sexual motivation.

(d) The person has committed one or more offenses in which the person has tortured or engaged in ritualistic acts with one or more victims.

(e) The person has committed one or more offenses in which one or more victims were physically harmed to the degree that the particular victim's life was in jeopardy.

(f) Any other relevant evidence.

**{¶25}** Asadi-Ousley argues there is no documented history of past sexually violent offenses, no proof that his behavior is chronic to a degree that it would be likely he would offend again, and no proof he behaved in a manner that could be construed as torturous or ritualistic.

**{¶26}** While Asadi-Ousley has had several prior convictions for violent offenses, the convictions in the instant case were his first for sexually oriented offenses. This court, however, has previously held that the sexually violent predator statute does not require a defendant to have a prior conviction for a sexually oriented offense to be found guilty of a sexually violent predator specification. *State v. Mitchell*, 8th Dist. Cuyahoga No. 94287, 2010-Ohio-5775 ¶ 26.

**{¶27}** Moreover, in determining that Asadi-Ousley is a sexually violent predator, a review of the record reveals the trial court considered the harm he caused to T.M. and

Asadi-Ousley's prior criminal record (convictions for aggravated robbery with a gun, robbery, burglary, and having a weapon while under disability). The court stated:

> [B]ased on the facts of this particular case and based on his violent record, I do find him to be a sexually violent predator and find him guilty of the sexually violent predator specification beyond a reasonable doubt.
>
> Obviously aggravated robbery, burglary, having a weapon under disability and robbery are all offenses of a serious nature and the one was with a weapon, a firearm, so obviously that's incredibly serious and in this particular case, he snatched a woman walking down the street at 10:30 or so at night and he didn't just restrain her of her liberty, that would be bad enough, but you actually dragged her into an alley and thereafter threatened her life and saying if she told anybody you would kill her and holding the knife to her throat and scratching her throat, you then raped her.
>
> I know the defense was consent. However, the injuries described by the victim, the bleeding as described by [the state], the injuries as indicated to the hospital personnel when she went to the hospital, the great pain she suffered, the psychological harm she suffered as a result of this very, very violent act would indicate that his behavior is of such a nature that he is likely to re-offend.
>
> So I make that finding beyond a reasonable doubt and I will set this for sentencing at a later date.

{¶28} Based on the foregoing, we find sufficient evidence to support the sexually violent predator conviction. Thus, the second assignment of error is overruled.

## C. Manifest Weight of the Evidence

{¶29} In his third assignment of error, Asadi-Ousley argues that all of his convictions are against the manifest weight of the evidence.

{¶30} In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13, citing *Thompkins*, 78 Ohio St.3d at 390, 1997-Ohio-52,

678 N.E.2d 541. The Ohio Supreme Court in *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, has stated:

> [T]he reviewing court asks whose evidence is more persuasive — the state's or the defendants? * * * "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." [*Thompkins* at 387], citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

{¶31} Moreover, an appellate court may not merely substitute its view for that of the jury, but must find that "'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Martin*.

{¶32} We note that when considering a manifest weight challenge, the trier of fact is in the best position to take into account inconsistencies, along with the witnesses's manner, demeanor, gestures, and voice inflections, in determining whether the proffered testimony is credible. *State v. Kurtz*, 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999, ¶ 26; *see also State v. Lilliard*, 8th Dist. Cuyahoga Nos. 99382, 99383, and 99385, 2013-Ohio-4906, ¶ 93 (in considering the credibility of witnesses on a manifest weight challenge, an appellate court is "guided by the presumption" that the jury, or the trial court in a bench trial, is "'best able to view the witnesses and observe their demeanor,

gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Id.*, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984)). Therefore, we afford great deference to the factfinder's determination of witness credibility. *State v. Ball*, 8th Dist. Cuyahoga No. 99990, 2014-Ohio-1060, ¶ 36.

**{¶33}** Asadi-Ousley argues the jury and trial court "lost their way" because T.M. is unreliable and lacks credibility. In support of his argument, he refers to her testimony that, on the night of the attack, she had been consuming alcohol and smoking marijuana with friends, she could not recall if there were one or two assailants, she waited several days before going to the hospital, and she suffers from depression. We disagree.

**{¶34}** Asadi-Ousley was found guilty based on the evidence of several witnesses and corroborated by DNA testing. T.M. testified that she was approached from behind on the street by a stranger, forced at knife point into a dark alley, and then struck so violently over the head that she lost consciousness. When she regained consciousness, her shirt was torn open and her pants and underwear were down. She knew that she had been violated sexually. T.M. testified how the rape has adversely affected her psychologically. She suffered from depression and laid in bed for days before deciding to call her mother. Her mother testified as to the phone call she received from T.M., and the hysteria in T.M.'s voice. The nurse who treated T.M. testified to T.M.'s demeanor, pain, bleeding, and visible injuries. Asadi-Ousley's DNA was found on T.M.'s vaginal swabs and underwear. T.M. testified that her only consensual partner was her boyfriend.

**{¶35}** Based on the foregoing, it cannot be said the jury "lost its way" in finding Asadi-Ousley guilty of rape, kidnapping, and felonious assault. It further cannot be said that the trial court "lost its way" in finding Asadi-Ousley to be a sexual predator. This is not the rare case where the trier of fact clearly lost its way and created a manifest miscarriage of justice.

**{¶36}** Accordingly, the third assignment of error is overruled.

### D. Merger and Ineffective Assistance of Counsel

**{¶37}** In his fourth and fifth assignments of error, Asadi-Ousley argues the trial court erred when it failed to merge Counts 2 (rape), 5 (felonious assault), and 7 (kidnapping) because the offenses are allied offenses of similar import, and defense counsel was ineffective for failing to argue that these counts should have merged for purposes of sentencing.

**{¶38}** Initially, we note that in order to establish a claim of ineffective assistance of appellate counsel, Asadi-Ousley must establish that the performance of his appellate counsel was deficient and the deficiency resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984).

**{¶39}** In *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, the Ohio Supreme Court held that

> [a]n accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice.

*Id*. at ¶ 3. The court further explained that

an accused has the burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus; and, absent that showing, the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error.

*Id.*

**{¶40}** In this case, we find Asadi-Ousley's ineffective assistance of counsel claim regarding defense counsel's failure to request merger of the rape, felonious assault, and kidnapping offenses at sentencing fails under the second prong of *Strickland*. For the reasons that follow, Asadi-Ousley cannot show prejudice, or a reasonable probability that but for trial counsel's failure to request a merger, the outcome of the proceedings would have been different.

**{¶41}** Pursuant to R.C. 2941.25(A), "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." However,

[w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25(B).

**{¶42}** In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the court held that if a defendant's conduct supports multiple offenses, the defendant can be convicted of all of the offenses if any one of the following is true (1) the conduct

constitutes offenses of dissimilar import, (2) the conduct shows the offenses were committed separately, or (3) the conduct shows the offenses were committed with separate animus. *Id.* at paragraph three of the syllabus, citing R.C. 2941.25(B). Two or more offenses are of dissimilar import within the meaning of R.C. 2941.25(B) "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable" *Id.* at paragraph two of the syllabus.

{¶43} In this case, Asadi-Ousley argues the rape, kidnapping, and felonious assault offenses were committed with the same animus. He contends that the movement of coming up from behind T.M., putting a knife to her neck, telling her if she screamed he would kill her, and pushing her into an alleyway where the rape and robbery occurred, was done for the purpose of raping her with no separate, identifiable harm.

{¶44} After careful review, we disagree with Asadi-Ousley's characterization of the evidence. Significantly, Asadi-Ousley's argument disregards the fact that he struck T.M. on the top of her head with an unidentified object just prior to the commission of the rape. In our view, this conduct unquestionably involved a separate and identifiable harm, apart from T.M.'s kidnapping and the subsequent rape. While the record reflects that the felonious assault offense was committed during the commission of the kidnapping offense, the physical injuries caused by the felonious assault were separate and distinct from the harm caused by Asadi-Ousley's movement of T.M. at knife point. Similarly, while the felonious assault may have been committed to facilitate the rape, it

involved a separate harm from the harm that was involved in the commission of the rape.

Accordingly, we find Asadi-Ousley's felonious assault was an offense of dissimilar import and, therefore, was not an allied offense subject to merger.

**{¶45}** With respect to the offenses of rape and kidnapping, the Supreme Court of Ohio has acknowledged that "implicit within every forcible rape * * * is a kidnapping" because the victim's liberty is restrained during the act of forcible rape. *State v. Logan*, 60 Ohio St.2d 126, 130, 397 N.E.2d 1345 (1979). In *Logan*, the court provided the following guidelines for determining whether kidnapping and another offense are allied offenses that should merge prior to sentencing, stating:

> (a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;
> (b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

*Id*. at syllabus.

**{¶46}** Applying these guidelines, the Ohio Supreme Court held in *Logan,* that the offender's conduct in forcing the victim into an alley before raping her at knife point was committed without a separate animus. The court found that the movement was slight, the detention brief, and the victim was released immediately after the commission of the

underlying crime, compelling the court's conclusion that the kidnapping was incidental to the rape. *Id*. at 135.

**{¶47}** Although *Logan* predates *Ruff*, Ohio courts continue to apply the guidelines set forth in *Logan* in determining whether kidnapping and another offense were committed with a separate animus, in accordance with the third prong of the *Ruff* test. *State v. Armengau*, 10th Dist. Franklin No. 14AP-679, 2017-Ohio-4452, ¶ 125, citing *State v. D.E.M.*, 10th Dist. Franklin No. 15AP-589, 2016-Ohio-5638, ¶ 143; *State v. Williams,* 7th Dist. Mahoning No. 13 MA 125, 2015-Ohio-4100, ¶ 18; *State v. Stinnett*, 5th Dist. Fairfield No. 15-CA-24, 2016-Ohio-2711, ¶ 53.

**{¶48}** In arguing the trial court erred by failing to merge his kidnapping and rape convictions, Asadi-Ousley relies extensively on this court's decision in *State v. Echols*, 8th Dist. Cuyahoga No. 102504, 2015-Ohio-5138. In *Echols*, victim one was walking home late at night. As she passed a large tree or shrub near East 93rd Street and Woodland Avenue, a person jumped out from the tree and came up behind her. The individual held a knife to her throat and threatened her. He moved her from the sidewalk to behind the tree and raped her. Another attack occurred approximately five years later, involving a different victim. Victim two was unavailable to testify at trial because she had been murdered. Her medical records documented her recounting of events that occurred. She stated that she was walking home when a car pulled up and an unknown individual told her to get into the car or he would hurt her. She complied. She was hit in the head with a brick and raped. Sexual assault kits were performed on

both victims.   DNA testing revealed that the defendant's DNA was consistent with that of the attacker in both victims.   *Id*. at ¶ 3-5.

**{¶49}** On appeal, Echols argued that each rape conviction should have merged with each kidnapping conviction.   Relying on *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892 and *Logan*, 60 Ohio St.2d 126, 130, 397 N.E.2d 1345 (1979), we found that the asportation of victim one was slight, stating:

> Victim one was moved from the sidewalk to behind a tree next to the sidewalk.   There was no increased risk of harm associated with this movement apart from that associated with the sexual assault.   This movement was done for the purpose of raping [victim one] with no separate, identifiable harm.   The movement was done in conjunction with the rape, and was not separated by any significant length of time or distance.

*Id.* at ¶ 38.   We concluded that because "the movement was slight, occurred close in time to the rape, and was done solely to facilitate the rape[,] the trial court erred when it failed to merge the rape and kidnapping counts related to [victim one]."   *Id*. at ¶ 39.

**{¶50}** We contrasted victim one's movement with the movement of victim two, who was abducted from the bus stop.   With victim two, the defendant forced her to get into his vehicle, hit her with a brick once in the car, and he drove her away from the area.   We found that the "asportation of [victim two] constituted a separate crime for which [defendant] may be separately punished."   *Id*. at ¶ 40.

**{¶51}** After careful consideration, we find *Echols* to be applicable, but factually distinguishable from the circumstances presented in this case.   As with victim one in *Echols*, the movement of T.M. was slight and occurred close in time to the rape.

Analogous to the movement of victim one "from the sidewalk to a tree," the testimony presented in this case established that T.M. was moved from the sidewalk to a nearby alleyway, or "the cut." The record indicates that the alleyway was not far from where T.M. had been walking. Thus, the restraint of T.M. was not prolonged, nor was the movement substantial enough to demonstrate a separate animus for the kidnapping and for the rape under *Logan*.

{¶52} As mentioned above, however, the *Logan* decision went on to state that "[w]here the asportation or restraint of the victim *subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime*, there exists a separate animus as to each offense sufficient to support separate convictions.*" (Emphasis added.) *Logan*, 60 Ohio St.2d 126, 397 N.E.2d 1345, at syllabus. In this case, T.M. was knocked unconscious during her movement into the alleyway. Although the asportation was limited, Asadi-Ousley's commission of the "dissimilar" felonious assault offense during his movement of T.M. rendered her defenseless and, in our view, subjected her to an increased risk of harm that was separate and apart from that involved in the underlying rape. Under these circumstances, the kidnapping offense ceased to be incidental to the underlying rape from which it might have originated. *See State v. Jones*, 10th Dist. Franklin No. 15AP-670, 2017-Ohio-1168 (holding that defendant's blows to victim's head which knocked her to the floor and rendered her unconscious constituted substantial increases in the risk of harm separate and apart from the force involved in raping a victim); *State v. Terrell*, 1st Dist. Hamilton

No. C-080286, 2009-Ohio-3257 (holding that victim was subjected to a substantial increase in risk of harm separate and apart from rape when victim was struck in the face and moved to a nearby grassy area where a rape occurred). Accordingly, we find there was "a separate animus as to each offense sufficient to support separate convictions" for kidnapping and rape.

{¶53} Based on the foregoing, we cannot conclude that the trial court committed plain error by failing to merge Asadi-Ousley's convictions for purposes of sentencing. For these same reasons, Asadi-Ousley's ineffective assistance of counsel claim fails under the second prong of the *Strickland* test. Asadi-Ousley cannot show a reasonable probability that but for defense counsel's failure to request merger of his convictions at sentencing, the result of the proceedings would have been different.

{¶54} Accordingly, Asadi-Ousley's fourth and fifth assignments of error are overruled.

{¶55} Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

———————————————————

EILEEN T. GALLAGHER, JUDGE

LARRY A. JONES, SR., P.J., CONCURS;
MARY EILEEN KILBANE, J., CONCURS IN JUDGMENT ONLY WITH SEPARATE
ATTACHED OPINION

MARY EILEEN KILBANE, J., CONCURRING IN JUDGMENT ONLY:

{¶56} I respectfully concur in judgment only with the majority's decision to affirm Asadi-Ousley's convictions and sentence. I write separately to briefly address the applicability of *Echols,* 8th Dist. Cuyahoga No. 102504, 2015-Ohio-5138, to the majority's merger analysis.

{¶57} The majority concludes that the facts surrounding victim one are analogous to the instant case, finding that the restraint of T.M. was not prolonged, nor was the movement substantial enough to demonstrate a separate animus. Whereas, I would find that the facts surrounding T.M.'s attack are more analogous to victim two in *Echols*. The facts in *Echols* reveal that the defendant forced victim two into a car and drove her to another location, where he committed the rape.

{¶58} Here, the inception of the crime was when T.M. was approached from behind by knife point as she was walking down the street. This act caused her to submit to being dragged into a secluded alleyway, behind a beauty supply store (kidnapping), where she was knocked unconscious by a blow to the head and then raped. Specifically, Asadi-Ousley forcibly moved T.M. at knife point from a publicly visible area into a

concealed alleyway, behind a beauty supply store, where he was more easily able to perpetrate the rape of an unconscious T.M. T.M. then awoke to find herself on the ground with her lip and nose bleeding, her shirt ripped open, and her pants and underwear pulled down. This movement, just as the movement of victim two, constituted a separate crime for which Asadi-Ousley may be separately punished. The movement was not slight, T.M. was removed from her location and dragged to a secluded area, and the confinement was attempted to be kept secret, subjecting T.M. to a substantial increase in harm separate from the rape.

{¶59} While I do not find the asportation was limited, I agree with the majority's conclusion that the offenses do not merge for the purposes of sentencing. As a result, I would affirm the trial court's judgment.