[Cite as *State v. Frierson*, 2019-Ohio-317.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106841**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**MICHAEL A. FRIERSON**

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED; REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-610325-A

**BEFORE:** E.A. Gallagher, P.J., Kilbane, A.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** January 31, 2019

**ATTORNEYS FOR APPELLANT**

Timothy Young
Ohio Public Defender
BY: Patrick Clark
Assistant Public Defender
250 E. Broad Street
#1400
Columbus, Ohio 43215


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY: Melissa Riley
        Daniel T. Van
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


EILEEN A. GALLAGHER, P.J.:

{¶1} Defendant-appellant Michael Frierson appeals his convictions entered in the Cuyahoga County Court of Common Pleas.   For the following reasons, we reverse and remand.

**Facts and Procedural History**

{¶2} On October 3, 2016, Frierson was indicted on three counts of rape and two counts of kidnapping.   The rapes in counts one and two and the kidnapping in count three related to crimes connected against L.C. and were alleged to have occurred on or about July 12, 1997. The rape in count four and the kidnapping in count five related to crimes connected against C.C. and were alleged to have occurred on or about September 29, 2000.   Each count contained a sexually violent predator specification and a notice of prior conviction.   Frierson did not have any prior sexually violent offense convictions.

**{¶3}** The trial court bifurcated the counts pertaining to L.C. and C.C. and separate jury trials were held. As a result of the trials, Frierson was found not guilty of rape in count one, guilty of rape in count two, guilty of kidnapping in count three, guilty of rape in count four and not guilty of kidnapping in count five. The sexually violent predator specifications associated with the counts for which the juries returned a guilty verdict proceeded to a bench trial, and the trial court found Frierson guilty of those specifications.

**{¶4}** The trial court imposed prison terms of 20 years to life for each of Frierson's convictions and ordered the three sentences to be served concurrently.

**Law and Analysis**

**I. Sexually Violent Predator Specifications**

**{¶5}** In his first assignment of error, Frierson argues that the trial court committed plain error when it found him guilty of the sexually violent predator specifications because the application of R.C. 2971.01, as amended by the legislature in 2005, violates the Ex Post Facto Clause of the United States Constitution and the Retroactivity Clause of the Ohio Constitution.

**{¶6}** Frierson did not raise that argument before the trial court. "Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes waiver of such issue and * * * therefore need not be heard for the first time on appeal." *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus. However, the waiver doctrine of *Awan* has been ruled to be discretionary. *State v. Bruce*, 8th Dist. Cuyahoga No. 89641, 2008-Ohio-926, ¶ 9, citing *In re M.D.*, 38 Ohio St.3d 149, 527 N.E.2d 286 (1988), syllabus; *State v. Colon*, 8th Dist. Cuyahoga No. 103504, 2016-Ohio-3462, ¶ 13. Finding plain error in this instance, we elect to exercise our discretion to consider Frierson's Ex Post Facto argument.

**{¶7}** The crux of the present Ex Post Facto challenge is stated as follows: At the time Frierson committed his crimes, he would not have been eligible for sexually violent predator specifications under the language of R.C. 2971.01 as interpreted by the Ohio Supreme Court in *State v. Smith*, 104 Ohio St.3d 106, 2004-Ohio-6238, 818 N.E.2d 283. The legislature subsequently amended R.C. 2971.01 in 2005 such that Frierson would be eligible for sexually violent predator specifications and the enhanced sentencing penalties commiserate therewith. We find amended R.C. 2971.01, as applied to Frierson, to violate the Ex Post Facto Clause of the United States Constitution.

### A. The Prior Version of R.C. 2971.01

**{¶8}** At the time of Frierson's crimes, R.C. 2971.01(H)(1) defined a "sexually violent predator" as "a person who has been convicted of or pleaded guilty to committing, on or after the effective date of this section [January 1, 1997], a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." *See* 1995 Ohio H.B. 180.

### B. State v. Smith

**{¶9}** In *State v. Smith*, 104 Ohio St.3d 106, 2004-Ohio-6238, 818 N.E.2d 283, the Ohio Supreme Court held that a conviction of a sexually violent offense cannot support the specification that the offender is a sexually violent predator as defined in R.C. 2971.01(H)(1) if the conduct leading to the conviction and the sexually violent predator specification are charged in the same indictment. *Id.* at syllabus. In interpreting the language of R.C. 2971.01(H)(1), the court held:

> These words clearly indicate that at the time of indictment, the person has already been convicted of a sexually violent offense. A grand jury cannot indict based on a conviction that has not occurred and may not ever occur.

*Id.* at ¶ 18.

[T]he General Assembly intended that a conviction of a sexually violent offense that existed prior to the current indictment must be used to support a sexually-violent-predator specification.

*Id*. at ¶ 27.

Under the state's interpretation of R.C. 2971.01(H)(1), R.C. Chapter 2971 would impose severe penalties on persons who are first-time offenders but who are also determined to be sexually violent predators. For example, a person convicted of gross sexual imposition pursuant to R.C. 2907.05(A)(4), a third-degree felony, identified as a sexually violent offense by R.C. 2971.01(L)(1), would normally be subject to a maximum sentence of five years' imprisonment. R.C. 2907.05(B) and 2929.14(A)(3). However, under the state's interpretation of R.C. 2971.01(H)(1), even a first-time offender could be defined as a sexually violent predator and would be subject to a maximum sentence of life in prison under R.C. 2971.03(A)(3). R.C. Chapter 2971 is a sentence-enhancement statute, and consequently, we must construe any ambiguities against the state. R.C. 2901.04(A). We decline to interpret R.C. 2971.01(H)(1) to permit the state to subject first-time offenders of certain sexual offenses to such draconian sentence enhancements without an unambiguous mandate from the General Assembly. To do so would conflict with the criminal-sentencing guidelines.

*Id*. at ¶ 28-29.

### C. Amendment of R.C. 2971.01(H)(1).

{¶10} In response to *Smith*, the General Assembly modified R.C. 2971.01(H)(1) in 2005, replacing the phrase "has been convicted of or pleaded guilty to committing" with the word "commits." It is now no longer necessary for a sex offender to have a prior conviction of a sexually violent offense in order to satisfy the sexually violent predator specification.

### D. The Application of Amended R.C. 2971.01(H)(1) to Frierson Violates the Ex Post Facto Clause

{¶11} Retroactive changes in the measure of punishment are impermissibly ex post facto if they subject a defendant to a more severe sentence than was available at the time of the offense. *State v. Furness*, 8th Dist. Cuyahoga No. 99930, 2014-Ohio-414, ¶ 11, citing *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829. The Ex Post Facto Clause found in Section 10, Article I of the United States Constitution, bars "[e]very law that changes the

punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." *State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2583, 972 N.E.2d 534, ¶ 50, quoting *Calder v. Bull*, 3 U.S. 386, 390, 1 L.Ed. 648, 3 Dall. 386 (1798).

**{¶12}** We find the Ex Post Facto Clause to be applicable in this instance. Under the plain language in R.C. 2971.01(H)(1) as it existed at the time of Frierson's offenses, he was not eligible for the enhanced, indefinite sentencing under R.C. 2971.03 because he did not qualify as a sexually violent predator. As the Ohio Supreme Court stated in *Smith*, the words of R.C. 2971.01(H)(1) as it existed during the relevant periods clearly indicated that at the time of indictment, the person must have already been convicted of a sexually violent offense in order to be eligible for the specification. The legislature's subsequent amendment of the statute following *Smith* was not mere "clarification" as the state argues, but a significant and substantive change to the definition of "sexually violent predator," allowing, for the first time, the underlying conduct in an indictment to satisfy the specification without a prior conviction. As applied to Frierson, this amendment greatly enhanced his potential punishment by subjecting him to the indefinite sentencing found in R.C. 2971.03 whereas he was not subject to an enhanced sentence prior to the amendment. Therefore, we find that amended R.C. 2971.01(H)(1), as applied to Frierson, violates the Ex Post Facto Clause of the United States Constitution.

**{¶13}** Frierson's first assignment of error is sustained.

**{¶14}** Frierson's second and third assignments of error are moot.

**II. Confrontation Clause**

**{¶15}** In his fourth assignment of error, Frierson argues that the use of a Skype call to present witness testimony violated his right to confrontation and his right to due process in his first jury trial.

**{¶16}** The Sixth Amendment to the United States Constitution provides, "[i]n all criminal prosecutions the accused shall enjoy the right * * * to be confronted with the witnesses against him." The Confrontation Clause of the Sixth Amendment is made applicable to the states by the Fourteenth Amendment. *State v. Issa*, 93 Ohio St.3d 49, 59, 2001-Ohio-1290, 752 N.E.2d 904 (2001), fn. 4. Consequently, this constitutional right applies to both federal and state prosecutions, but the right of confrontation in Article I, Section 10 of the Ohio Constitution provides no greater right of confrontation than the Sixth Amendment. *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 12.

**{¶17}** However, the United States Supreme Court has held that although "the Confrontation Clause reflects a preference for face-to-face confrontation at trial," that "preference must occasionally give way to considerations of public policy and the necessities of the case." *Maryland v. Craig*, 497 U.S. 836, 849, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).

**{¶18}** In holding that the right to confrontation is not absolute, the court detailed a number of important reasons for that right, including (1) the giving of testimony under oath, (2) the opportunity for cross-examination, (3) the ability of the fact finder to observe demeanor evidence, and (4) the reduced risk that a witness will wrongfully implicate an innocent defendant. *Id*. at 845-846; *State v. Marcinick*, 8th Dist. Cuyahoga No. 89736, 2008-Ohio-3553, ¶ 14.

**{¶19}** "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Craig* at 845.

**{¶20}** In *Marcinick*, this court utilized the two-part analysis from *Craig* to determine whether the admission of testimony via teleconference at trial violated the defendant's right of confrontation. This court held:

> To qualify as an exception, the procedure must (1) be justified, on a case-specific finding, based on important state interests, public policies, or necessities of the case and (2) must satisfy the other three elements of confrontation — oath, cross-examination, and observation of the witness's demeanor.

*Marcinick* at ¶ 18, citing *Harrell v. State*, 709 So.2d 1364, 1369 (Fla.App.1998), citing *Craig* at 849-851.

**{¶21}** Applying the *Craig* analysis, this court found in *Marcinick* that the teleconferencing testimony of a social worker witness who was out of the country, did not violate the defendant's right to confrontation because the state demonstrated that the witness was unavailable, established the admissibility of the testimony and the two-way video link preserved the reliability elements of confrontation. *Id.* at ¶ 22.

**{¶22}** In *State v. Gay*, 8th Dist. Cuyahoga No. 101345, 2015-Ohio-524, we rejected a confrontation clause challenge to three out-of-state victims who testified via Skype where the state demonstrated the witnesses' unavailability, the defendant did not object and the witnesses were subject to cross-examination and observed by both the defendant and the jury throughout their testimony.

**{¶23}** In *State v. Oliver*, 8th Dist. Cuyahoga No. 106305, 2018-Ohio-3667, we upheld the use of Skype testimony for an out-of-state witness who was providing care for a liver transplant/dialysis patient but found that the trial court erred in allowing a second witness to testify via Skype where that witness was not unavailable to testify in person but rather would have been merely inconvenienced. We found that although the reliability elements of confrontation had been satisfied for that witness the unavailability threshold was not met by mere inconvenience.

**{¶24}** In this instance, Frierson does not argue that the reliability elements of confrontation set forth in *Marcinick* were not satisfied but instead asserts that the state failed to

establish the witness's unavailability. The record reflects that C.C., the victim of the rape charged in count four, had been deported from the United States in 2002. The state introduced deportation records pertaining to C.C. that reflected that she was prohibited from entering the United States "[a]t any time because you have been found inadmissible or excludable under Section 212 of the Act, or deportable under Section 241 or 237 of the Act, and ordered deported or removed from the United States, and you have been convicted of a crime designated as an aggravated felony." An investigator with the CODIS unit of the Cuyahoga County Prosecutor's office testified that their office reached out to immigration officials to arrange to have C.C. return to the United States for trial but that those efforts were unsuccessful. Frierson correctly points out that the prosecutor's office could have sought a Significant Public Benefit Parole through ICE to allow C.C. leave to return to the United States for trial. However, Frierson did not raise this option during the extensive pretrial hearings conducted by the trial court concerning C.C.'s availability to testify and the appropriateness of the Skype connection for trial. Under these circumstances we cannot say that the trial court erred in finding C.C. to be unavailable.

{¶25} Frierson's fourth assignment of error is overruled.

### III. Allied Offenses

{¶26} In his fifth assignment of error, Frierson argues that the trial court erred in finding that his convictions for rape and kidnapping in counts two and three did not merge as allied offenses. Contrary to the state's argument, this issue was raised and contested by Frierson's counsel prior to sentencing.

{¶27} The testimony at trial established that Frierson approached the victim, L.C., on the street and forced her down a nearby alleyway at gunpoint where he forced L.C. to remove her

clothes and then raped her. L.C. was released immediately following the rape. The trial court held that the offenses did not merge because L.C. was removed from public view and isolated.

{¶28} R.C. 2941.25(A) allows only a single conviction for conduct that constitutes "allied offenses of similar import." Pursuant to R.C. 2941.25(B), a defendant charged with multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 13, citing *State v. Moss*, 69 Ohio St.2d 515, 519, 433 N.E.2d 181 (1982).

{¶29} In *Ruff,* the Ohio Supreme Court recently clarified the test a trial court and a reviewing court must employ in determining whether offenses are allied offenses that merge into a single conviction, stating:

When the defendant's conduct constitutes a single offense, the defendant may be convicted and punished only for that offense. When the conduct supports more than one offense, however, a court must conduct an analysis of allied offenses of similar import to determine whether the offenses merge or whether the defendant may be convicted of separate offenses. R.C. 2941.25(B).

A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed? If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses (1) the offenses are dissimilar in import or significance — in other words, each

offense caused separate, identifiable harm; (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation.

At its heart, the allied offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

*Id.* at ¶ 24-26.

**{¶30}** In determining if two or more offenses were committed with a separate animus this court in *State v. Bailey*, 8th Dist. Cuyahoga No. 100993, 2014-Ohio-4684, stated:

[T]he issue of whether two offenses are allied depends not only on whether the two crimes were committed in the same act, but also with a single state of mind. The Ohio Supreme Court has defined the term "animus" to mean "purpose or, more properly, immediate motive." *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979). Because animus is often difficult to prove directly, it may be inferred from the surrounding circumstances. When "an individual's immediate motive involves the commission of one offense, but in the course of committing that crime he must, a priori, commit another, then he may well possess but a single animus, and in that event may be convicted of only one crime." *Id*.

> Thus, when determining whether two offenses were committed with a separate animus, the court must consider (1) whether the first offense was merely incidental to the second offense or whether the defendant's conduct in the first offense demonstrated a significance independent of the second, and (2) whether the defendant's conduct in the first offense subjected the victim to a substantial increase in the risk of harm apart from that involved in the second offense. *State v. Shields*, 1st Dist. Hamilton No. C-100362, 2011-Ohio-1912, ¶ 17.

*Id*. at ¶ 34-35.

**{¶31}** With respect to the offenses of rape and kidnapping, the Supreme Court of Ohio has acknowledged that "implicit within every forcible rape * * * is a kidnapping" because the victim's liberty is restrained during the act of forcible rape. *State v. Asadi-Ousley*, 2017-Ohio-7252, 102 N.E.3d 52, ¶ 38 (8th Dist.), citing *Logan* at 130. In *Logan*, the court provided the following guidelines for determining whether kidnapping and another offense are allied offenses that should merge prior to sentencing, stating:

> (a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;

> (b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

*Logan* at syllabus.

**{¶32}** Applying these guidelines, the Ohio Supreme Court held in *Logan* that the offender's conduct in forcing the victim into an alley before raping her at knife point was committed without a separate animus. The court found that the movement was slight, the

detention brief and the victim was released immediately after the commission of the underlying crime, compelling the court's conclusion that the kidnapping was incidental to the rape. *Id.* at 135. Although *Logan* predates *Ruff*, Ohio courts continue to apply the guidelines set forth in *Logan* to determine whether kidnapping and other offenses were committed with a separate animus, in accordance with the third prong of the *Ruff* test. *State v. Lundy*, 8th Dist. Cuyahoga No. 105117, 2017-Ohio-9155, ¶ 26.

**{¶33}** We find *State v. Echols*, 8th Dist. Cuyahoga No. 102504, 2015-Ohio-5138, to be illustrative in this case. In *Echols*, victim K.C. was walking home late at night. As she passed a large tree or shrub near East 93rd Street and Woodland Avenue, "Echols jumped out from the tree" and came up behind her. Echols held a knife to her throat and threatened her before moving her from the sidewalk to behind the tree and then raping her. Another attack occurred approximately five years later, involving a different victim. Victim M.M. was walking home when a car pulled up and Echols told her to get into the car or he would hurt her. She complied. She was hit in the head with a brick and raped.

**{¶34}** On appeal, Echols argued that each rape conviction should have merged with each kidnapping conviction. Relying on *Ruff* and *Logan*, we found that the asportation of victim one was slight, stating:

> Victim one was moved from the sidewalk to behind a tree next to the sidewalk. There was no increased risk of harm associated with this movement apart from that associated with the sexual assault. This movement was done for the purpose of raping [victim one] with no separate, identifiable harm. The movement was done in conjunction with the rape, and was not separated by any significant length of time or distance.

*Id.* at ¶ 38.

**{¶35}** We concluded that because "the movement was slight, occurred close in time to the rape, and was done solely to facilitate the rape[,] the trial court erred when it failed to merge the rape and kidnapping counts related to [victim one]." *Echols* at ¶ 39.

**{¶36}** We contrasted victim K.C.'s movement with the movement of victim M.M., who was abducted "from the bus stop." With victim M.M., the defendant forced her to get into his vehicle, hit her with a brick once in the car and drove her away from the area. We found that the "asportation of [victim two] constituted a separate crime for which [defendant] may be separately punished." *Echols* at ¶ 40.

**{¶37}** Similarly, in *State v. Asadi-Ousley*, 2017-Ohio-7252, 102 N.E.3d 52 (8th Dist.), we considered asportation facts nearly identical to those of the present case. In *Asadi-Ousley*, the victim was moved from the sidewalk to a nearby alleyway that was not far from where the victim had been walking. This court concluded that the restraint of the victim was not prolonged, nor the movement substantial enough to demonstrate a separate animus for the kidnapping and the subsequent rape. However, despite the limited asportation, the court in *Asadi-Ousley* found that the rape and kidnapping charges did not merge as allied offenses because the victim was knocked unconscious by a blow delivered to the back of her head during her movement into the alleyway. *Id.* at ¶ 52. Therefore, the panel in *Asadi-Ousley* found that the victim had been subjected to an increased risk of harm that was separate and apart from that involved in the underlying rape such that the kidnapping offense ceased to be incidental to the rape.

**{¶38}** We find the facts on this case to be controlled by *Asadi-Ousley, Echols* and *Logan*. Because the movement of L.C. was slight, occurred close in time to the rape and was done solely to facilitate the rape we find that the trial court erred when it failed to merge the rape and kidnapping convictions in counts two and three.

**{¶39}** Frierson's fifth assignment of error is sustained.

**{¶40}** The judgment of the trial court is reversed.

**{¶41}** We vacate Frierson's convictions on the sexually violent predator specifications as well as his sentences on all three of the underlying counts.

**{¶42}** Case remanded for merger of counts two and three and resentencing consistent with this opinion.

It is ordered that appellant recover of appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MARY EILEEN KILBANE, A.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR