[Cite as *State v. Williams*, 2023-Ohio-458.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                                            :

    Plaintiff-Appellee,                          :

                                            No. 111654

    v.                                                         :

OBREA WILLIAMS,                                        :

    Defendant-Appellant.                       :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 16, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-654125-A

---

## *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Christine M. Vacha, Assistant Prosecuting Attorney, *for appellee*.

Charles Ruiz-Bueno Co., LPA, and J. Charles Ruiz-Bueno, *for appellant*.

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant, Obrea Williams, appeals from his judgment of conviction, which was rendered after a jury trial. After a thorough review of the facts and pertinent law, we affirm.

{¶ 2} In 2020, Williams was charged in a 25-count indictment with six counts of rape, 12 counts of gross sexual imposition, six counts of public indecency, and one count of endangering children.

{¶ 3} The matter proceeded to a jury trial. After the state presented its evidence, defense counsel made a motion pursuant to Crim.R. 29. The trial court granted the motion in part and dismissed five counts of gross sexual imposition and five counts of public indecency. The remaining counts went to the jury for consideration. The jury found Williams guilty of one count of gross sexual imposition, pursuant to R.C. 2907.05(A)(1), and one count of endangering children, pursuant to R.C. 2919.22(B)(1). The jury acquitted Williams of the remaining counts.

{¶ 4} The trial court sentenced Williams to a concurrent sentence of 18 months for gross sexual imposition, a fourth-degree felony, and six months for endangering children, a first-degree misdemeanor.[1] The trial court informed

---

[1] The endangering children count was originally indicted with a furthermore specification that Williams caused serious physical harm, making the charge a second-degree felony. After the verdict, the parties agreed that no furthermore finding was made and that the endangering children conviction was a first-degree misdemeanor. The trial court issued a nunc pro tunc journal entry reflecting the change, and Williams was sentenced on the misdemeanor.

Williams he was subject to five years of postrelease control and classified him as a Tier I sex offender.

{¶ 5} The trial testimony established the following facts. Williams began dating the victim's, A.T., mother and moved in with them when A.T. was ten years old. When A.T. was 13 or 14 years old, she got in trouble for sending inappropriate text messages to teenaged boys. A.T. testified that her mother and Williams took her phone away for "almost" a year. At some point Williams's behavior towards A.T. changed. According to A.T., when she was 14 and one-half years old and in the ninth grade Williams began sexually abusing her. The abuse continued for several months until she disclosed what was happening to her grandmother, sister, and mother.[2]

{¶ 6} A.T. remembered that the first time Williams touched her was in December 2019. He came into her room after her mother had already left for work and A.T. was getting ready for school. Williams told A.T. she needed to learn "how to take control with boys." Williams pulled A.T.'s shirt up and forcibly touched her breasts. A.T. cried.

{¶ 7} The second event happened about a week later when Williams told A.T. to take her clothes off. A.T. went upstairs and locked herself in the bathroom. After exiting the bathroom, A.T. went into her bedroom where Williams was waiting for her and again told her to get undressed. A.T. told him no, but Williams forcibly put his mouth on her breast. A.T. testified that the abuse continued until the spring of

---

[2] The date range for the gross sexual imposition count was December 1 to December 31, 2019. The date range for endangering children offense was October 1, 2019, to March 31, 2020.

2020 and alleged that it included him forcibly putting his mouth on her vagina or forcibly making her touch his penis.

{¶ 8} At some point after the abuse started, Williams found A.T.'s diary. He took pictures of some of the pages and threatened to tell A.T.'s mother what was in the diary. The diary entries were from before the abuse started.

{¶ 9} A.T.'s older sister, who did not live with A.T. at the time relevant to the case, noticed a change in A.T.'s behavior. The sister testified that A.T. became quiet, dressed in darker colors and bigger clothes, and acted "very closed off." When A.T. disclosed the abuse, she was afraid to say the words out loud, so she wrote what had happened on a piece of paper and gave it to her sister. The sister said A.T. was "afraid," "scared," and worried that Williams would disclose the contents of her diary to their mother. The sister called Williams to confront him. During the tape-recorded conversation, which was played for the jury and entered into evidence, Williams brought up the topic of the diary and claimed he could not understand why A.T. fabricated the allegations against him. He told the sister that recently A.T. has forgone bathing, tried to bring older boys in the house, and told him she was homosexual. He also claimed he knew A.T. was not afraid of him, using as an example that he did not carry his gun in the house but gave it to A.T.'s mother when he came home. Williams told the sister that someone was probably in A.T.'s ear telling her to make up lies; he had thought he and A.T. were "cool."

{¶ 10} A.T. went to stay with her grandmother in the spring of 2020; the abuse stopped at this time because Williams did not have access to A.T. After several

weeks living with her grandmother, the grandmother told A.T. it was time to go home. A.T. broke down and disclosed the abuse.

{¶ 11} A referral was made to Cuyahoga County Division of Children and Family Services ("CCDCFS") and A.T. met with a social worker. A.T. disclosed the identity of her abuser. According to the social worker's notes, A.T. claimed the abuse began in October 2019 and lasted until March 2020. The social worker explained how allegations of abuse, neglect or dependency are designated by CCDCFS as "unsubstantiated," "indicated," or "substantiated," and she designated the case as "substantiated" due to A.T.'s detailed disclosure.

{¶ 12} Euclid Police Detective Jennifer Kroczak was the investigating detective. She interviewed A.T., A.T.'s mother, and Williams. She also procured A.T.'s medical records and Williams's work records. The detective explained that although A.T. was not able to give exact dates the abuse occurred, it is not uncommon for victims of sexual assault to be unable to recall specific dates. According to the detective, the information she received corroborated the time period of the allegations. After Williams's interview, the detective concluded that Williams was home with the victim at the time that the offenses occurred. The detective noted that Williams's work records did not back up his claims that he was constantly working, but instead showed that there was an "opportunity for the offenses to have occurred" during the time period A.T. alleged the abuse took place.

{¶ 13} At some point, A.T.'s biological father received a call from A.T.'s mother. A.T.'s mother said she could no longer care for A.T. and needed the father

to take her. When A.T. came to her father's house, she was quiet, distant, and underweight. A.T.'s father eventually learned what had happened to A.T. A.T.'s father filed for full custody. According to the father, now that A.T. is living with him, she is back to the way he remembered, which is full of life and "vibrant," and he denied any behavioral issues.

{¶ 14} According to A.T.'s sister, their mother and Williams maintained their relationship even after A.T. disclosed that Williams sexually abused her.

{¶ 15} At the sentencing hearing, Williams denied abusing A.T., claiming A.T. was a liar, that he worked 12 to 16 hours a day so he could not have done the things A.T. alleged he did, and that he never tried to be her father or a father figure, so he had no role in disciplining her.

## Assignments of Error

I. The jury's verdict was against the manifest weight of the evidence and prejudicial against appellant.

II. The trial court committed prejudicial error by sentencing appellant to an excessive term of imprisonment, contrary to law.

## Law and Analysis

## Convictions not Against Manifest Weight of the Evidence

{¶ 16} In the first assignment of error, Williams contends that his convictions were against the manifest weight of the evidence.

{¶ 17} A challenge to the manifest weight of the evidence "'involves the inclination of the greater amount of credible evidence.'" *State v. Harris*, 8th Dist. Cuyahoga No. 109060, 2021-Ohio-856, ¶ 32, quoting *State v. Thompkins*, 78 Ohio

St.3d 380, 386, 678 N.E.2d 541 (1997). Weight of the evidence examines "'the evidence's effect of inducing belief.'" *Harris* at *id.*, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. In reviewing a manifest-weight claim, the court must consider all the evidence in the record, the reasonable inferences drawn from it, and the credibility of the witnesses to determine ""'whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice * * *.'"" *Harris* at *id.*, quoting *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). The discretionary power to grant a new trial should be reserved for exceptional cases where "'the evidence weighs heavily against the conviction.'" *Thompkins* at *id.*, quoting *Martin* at 175. The manifest-weight-of-the-evidence standard of review applies to a party's burden of persuasion. *State v. Messenger*, Slip Opinion No. 2022-Ohio-4562, ¶ 26, citing *State v. Messenger*, 2021-Ohio-2044, 174 N.E.3d 425, ¶ 44-45 (10th Dist.).

{¶ 18} Williams was convicted of one count of gross sexual imposition pursuant to R.C. 2907.05(A)(1), which states, in part, that no person shall have sexual contact with another, not their spouse, by purposely compelling them to submit by force or threat of force. Williams was also convicted of one count of endangering children, pursuant to R.C. 2919.22(B)(1), which provides, in pertinent part, that no person shall abuse a child under 18 years of age.

{¶ 19} Williams contends that his convictions were against the manifest weight of the evidence because A.T. had a motive to lie about him and her story was

full of inconsistencies. Williams points to A.T.'s inability to recall exact dates the abuse took place, and her inconsistency on remembering the month the abuse started. Additionally, he argues, his work records contradict A.T.'s claims of abuse.

{¶ 20} It is well-established that a victim of sexual abuse, especially a child, is often not able to recall the exact date of the occurrences of abuse. In *State v. Garner*, 8th Dist. Cuyahoga No. 102816, 2016-Ohio-2623, this court noted that many child victims are unable to remember exact dates and times, particularly where the crimes involved a repeated course of conduct over an extended period of time. *Id*. at ¶ 52, citing *State v. Mundy*, 99 Ohio App.3d 275, 296, 650 N.E.2d 502 (2d Dist.1994). "'The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse.'" *Garner* at *id*., quoting *State v. Robinette*, 5th Dist. Morrow No. CA-652, 1987 Ohio App. LEXIS 5996, 8 (Feb. 27, 1987). "Thus, when dealing with the memory of a child, reasonable allowances for inexact dates and times must be made." *Garner* at *id*.

{¶ 21} A.T. testified that the abuse began in December 2019. She provided detailed accounts to the police and the CCDCFS social worker. Although the police and social worker noted that A.T. told them the abuse began in September or October 2020, the inexactness in time was not detrimental to Williams's defense because he maintained at trial that the sexual abuse never occurred. *Garner* at ¶ 55. Moreover, he was acquitted of several counts. The gross sexual imposition count he was convicted of had a date range of December 1, to December 31, 2019, and the

child endangering count had a date range of October 1, 2019, to March 31, 2020. Thus, whether the first instance of abuse happened in September or December, A.T.'s testimony was that it continued until March 2020, thereby covering the dates in the indictment.

{¶ 22} In so far as the difference in dates weighing against A.T.'s credibility, the jury, as the trier of fact, was in the best position to weigh the credibility of the witnesses and it was within the jury's province to give the appropriate weight to A.T.'s testimony. Williams was convicted on two out of 25 counts of the original indictment. Again, the only felony count he was convicted of, gross sexual imposition, spanned the dates that A.T. said the abuse first occurred, in December 2019. Moreover, the jury was able to assess A.T.'s credibility and whether she would be so upset about losing her phone and Williams's intrusion into her diary that she would fabricate the allegations. Deferring to the jury's assessment of credibility, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.

{¶ 23} The first assignment of error is overruled.

**18-month Sentence was not Contrary to Law**

{¶ 24} In the second assignment of error, Williams claims his sentence was contrary to law because the trial court did not behave in an impartial manner and the sentence was contrary to trial testimony.

{¶ 25} We review challenges to felony sentencing under R.C. 2953.08, which provides that a court hearing an appeal under R.C. 2953.08(A), (B), or (C) shall

review the record, including the findings underlying the sentence or modification given by the sentencing court.[3] R.C. 2953.08(G)(2). The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. *Id.*

{¶ 26} Our standard for review is not whether the sentencing court abused its discretion. *Id.* This court may take any action authorized by this division if it clearly and convincingly finds either: (a) the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), whichever, if any, is relevant; or (b) the sentence is otherwise contrary to law. *Id.*; *see also State v. Stennett*, 8th Dist. Cuyahoga No. 111424, 2022-Ohio-4645, ¶ 12.

{¶ 27} R.C. 2953.08(G)(2) does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12. *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 39. "Nothing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects

---

[3] Although Williams claims he is challenging the sentences on both convictions, he makes no argument relative to his six-month sentence for misdemeanor child endangering. The trial court stated at the sentencing hearing that it had considered the purposes in misdemeanor sentencing found in R.C. 2929.21. As Williams makes no specific challenge to his six-month sentence, we affirm that portion of the sentence without further elaboration.

compliance with R.C. 2929.11 and 2929.12." *Jones* at ¶ 42.  In *State v. Toles*, 166 Ohio St.3d 397, 2021-Ohio-3531, 186 N.E.3d 784, ¶ 10, the court explained, "R.C. 2953.08, as amended, precludes second-guessing a sentence imposed by the trial court based on its weighing of the considerations in R.C. 2929.11 and 2929.12." *See also State v. Brunson*, Slip Opinion No. 2022-Ohio-4299, ¶ 69.

{¶ 28} Recently, the Ohio Supreme Court held that an "appellate court is not prohibited from reviewing a sentence when the claim is that the sentence was improperly imposed based on impermissible considerations." *State v. Bryant*, 168 Ohio St.3d 250, 2022-Ohio-1878, 198 N.E.3d 68, ¶ 22, *reconsideration denied*, 167 Ohio St.3d 1484, 2022-Ohio-2765, 192 N.E.3d 515.  Indeed, appellate courts are permitted to reverse or modify sentencing decisions that are ""otherwise contrary to law."" *Id.*, quoting *Jones* at ¶ 32, quoting R.C. 2953.08(G)(2)(b).  The court reiterated that the phrase "otherwise contrary to law" means ""in violation of statute or legal regulations at a given time."" *Bryant* at *id.*, quoting *Jones* at ¶ 34, quoting *Black's Law Dictionary* 328 (6th Ed.1990).

{¶ 29} In *Bryant*, the defendant had an outburst as the trial court announced it was sentencing him to 22 years in prison.  The defendant burst out yelling, using expletives and other offensive language towards the trial court judge.  In response, the court determined the defendant had no remorse for his crimes and increased the defendant's sentence by six years, from 22 to 28 years in prison.  The Ohio Supreme Court determined that the defendant's sentence was "contrary to law" because it was

"improperly imposed based on impermissible considerations — i.e., considerations that fall outside those that are contained in R.C. 2921.11 and 2929.12." *Id.* at ¶ 30.

{¶ 30} Williams does not argue that the trial court imposed a prison sentence that fails to comport with the principles and purposes of sentencing under R.C. 2921.11 and 2929.12, nor does Williams claim that his sentence was improperly imposed based on impermissible *considerations*, i.e., considerations that fall outside those that are contained in R.C. 2929.11 and 2929.12. Williams's argument is based on the premise that the trial court made impermissible *findings* in sentencing Williams to the maximum prison term. Specifically, Williams argues that the court erred in finding that the victim suffered "serious physical harm, psychological, or economic harm" and that the "physical and mental injury suffered by the victim of the offense was due to the conduct of the offender" because there was no testimony to support those findings. We disagree.

{¶ 31} The trial court stated that it was basing its sentence on the overriding principles and purposes of felony sentencing and considered the guidelines set forth in R.C. 2929.11, 2929.12, 2929.13 and 2929.19. The court stated:

> The Court does believe that the conduct is more serious than normally constituting the offense. The Court firsthand saw the victim's anguish on the stand, the difficulty in testifying due to the impact that the defendant's assault had on her.

> The Court does believe that the victim suffered serious physical harm, psychological, or economic harm. The Court does believe that the defendant's relationship with the victim facilitated that offense.

The physical or mental injury suffered by the victim of the offense was due to the conduct of the offender, and it was exacerbated because of the physical or mental condition and the age of the victim.

This victim was a very tender person, very gentle and quiet on the stand. She had no malice, no evil thoughts, no revenge. There is absolutely no indication that she wanted to be involved in the defendant's jewelry business, and because of it lied against him. Those statements the Court finds are not accurate.

The Court believes the victim did suffer serious physical and psychological or economic harm as a result, and that your relationship with the victim did facilitate the offense.

I do note your prior record. And I do make a finding that you have shown no genuine remorse for the offense, as it is clear from your statements here in court as well as your version of events in the presentence investigation report.

{¶ 32} The trial court determined that a sentence of community-control sanctions would demean the seriousness of the offense.

{¶ 33} Upon review, we find that the sentence complies with applicable rules and sentencing statutes. The sentence was within the statutory sentencing range. Williams has not shown that the trial court imposed the sentence based on impermissible considerations, i.e., considerations that fall outside those that are contained in R.C. 2929.11 and 2929.12. Therefore, we cannot review the sentence imposed under the arguments Williams presents, which are entirely premised on the review of the factual basis for the trial court's consideration of R.C. 2929.11 and 2929.12, *Stennett*, 8th Dist. Cuyahoga No. 111424, 2022-Ohio-4645, at ¶ 13, and we have no basis for concluding that Williams's sentence is contrary to law.

{¶ 34} The second assignment of error is overruled.

**Conclusion**

{¶ 35} Williams's convictions for gross sexual imposition and child endangering were not against the manifest weight of the evidence and his sentence of 18 months in prison was not contrary to law.

{¶ 36} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

EILEEN T. GALLAGHER, P.J., and
EMANUELLA D. GROVES, J., CONCUR