[Cite as *State v. Woods*, 2024-Ohio-1053.]

# Court of Appeals of Ohio, Eighth District

County of Cuyahoga
Nailah K. Byrd, Clerk of Courts

STATE OF OHIO

　　　　　　　　　　Appellee　　　　　COA No.　　　　LOWER COURT NO.
　　　　　　　　　　　　　　　　　　　112987　　　　CR-22-675829-A

　　-vs-　　　　　　　　　　　　　　COMMON PLEAS COURT

CHARLES WOODS

　　　　　　　　　　Appellant　　　　Motion No. 572946

Date　　March 21, 2024

_____ Journal Entry _____

Application by appellee for reconsideration is granted.　The journal entry and decision released on March 14, 2024, 2024-Ohio-954, is hereby vacated and substituted with the journal entry and opinion released this same date.

Adm. Judge Kathleen Ann Keough, Concurs

Judge Sean C. Gallagher, Concurs

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　Eileen T. Gallagher
　　　　　　　　　　　　　　　　　　　Judge

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,            :
                                                              No. 112987
v.                                      :

CHARLES WOODS,                          :

    Defendant-Appellant.           :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, VACATED IN PART
**RELEASED AND JOURNALIZED:** March 21, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-675829-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Steven Szelagiewicz, Assistant Prosecuting Attorney, *for appellee*.

Edward F. Borkowski, Jr., *for appellant*.

ON RECONSIDERATION[1]

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Charles Woods ("Woods"), appeals his convictions and claims the following errors:

> 1. Appellant's convictions were against the manifest weight of the evidence.
>
> 2. Appellant's convictions were unsupported by sufficient evidence.
>
> 3. The trial court erred by finding appellant to be a sexually violent predator.

{¶ 2} We affirm in part and vacate in part.

## I. Facts and Procedural History

{¶ 3} Woods was charged, in a 31-count indictment, with 12 counts of rape in violation of R.C. 2907.02(A)(1)(b); 19 counts of gross sexual imposition ("GSI") in violation of R.C. 2907.05(A)(4); and one count of importuning in violation of R.C. 2907.07(A). All the rape and GSI counts included sexually violent predator specifications. The indictment alleged that Woods committed these offenses against his cousins, B.M., C.C., D.D., N.M., and J.B., all of whom were under 13 years of age at the time of the offenses. Some offenses allegedly occurred as early as 2003, and others as late as 2015. Some counts included a furthermore clause alleging that the victim was under ten years of age at the time the offense was committed. And some

---

[1] The original decision in this appeal, *State v. Woods*, 8th Dist. Cuyahoga No. 112987, 2024-Ohio-954, released on March 14, 2024, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 22(C); *see also* S.Ct.Prac.R. 7.01.

counts included a furthermore clause alleging that Woods purposely compelled the victim to submit by force or threat of force.

{¶ 4} The victims each testified at trial that Woods raped and sexually assaulted them numerous times over a period of years. He was significantly older than them, and most of the incidents occurred in their grandmother's home on Continental Avenue in Cleveland, where Woods lived at the time. B.M., D.D., and C.C., who are sisters, went to their grandmother's house every day after school because their mother was still at work. N.M. testified that she lived with Woods in her grandmother's house in 2006 and 2007, and that Woods molested her when she was eight to ten years old. J.B., who is younger than the others, testified that she was assaulted by Woods at his house on Aetna Road in Cleveland.

{¶ 5} The victims' grandmother caught Woods sexually assaulting B.M. on October 3, 2009. B.M., who was born on December 24, 1996, was 12 years old at the time of this incident. (Tr. 281-282.) After her grandmother's discovery, B.M. told her mother that Woods sexually assaulted her. (Tr. 285.) Her mother questioned C.C. and D.D., who revealed that Woods had assaulted them as well. (Tr. 267-268, and 296.) B.M., C.C., and D.D. testified that Woods never assaulted them again after he was caught sexually assaulting B.M. on October 3, 2009. B.M. testified that her mother took them away from their grandmother's house, and she did not see Woods again until she was an adult.

{¶ 6} Police investigated the allegations of sexual assault in October 2009, but the adults in the family did not cooperate with the investigation, and no legal

action was taken at that time. (Tr. 268.) B.M., D.D., and C.C. decided to file a police report documenting the alleged rapes and assaults in 2019, after they had become adults. B.M. explained that she and her sisters decided to reopen the case because they had each suffered trauma as a result of Woods's actions, and they did not want him to victimize other children. (Tr. 248, 287.) Detective Richard Jackson ("Det. Jackson"), a sex-crimes detective with the Cleveland Police Department, confirmed that the case was originally opened in 2009, and that the investigation resumed in 2019, when C.C. called the Cleveland police and asked to have her case reopened. (Tr. 338.) During the investigation, Det. Jackson learned there were other victims and took statements from N.M. and J.B. (Tr. 350-351.)

{¶ 7} Det. Jackson questioned Woods in a recorded interview as part of the investigation. A video recording of the interview was played for the jury and admitted into evidence as state's exhibit No. 8. During the interview, Woods admitted that the victims' grandmother caught him in the act of sexually assaulting B.M. in 2009. He admitted that he "touched B.M's vagina" but claimed she had "clothes on." He also stated that he has been a sex addict since he was child, that his family knows he is a sexual predator, and that he has been trying to change. He acknowledged, "I know what I did was wrong" and "I already told you I'm guilty for that one reason." He denied sexually assaulting any of the other victims, claiming he could not have assaulted them because his family knows he is a sexual predator and they keep their children away of him. He also claimed that B.M. "made advances at him."

{¶ 8} Tina Fengfeld ("Fengfeld"), a sex-case social worker with the Cuyahoga County Division of Children and Family Services, interviewed J.B. due to her young age as a courtesy for the Cleveland Police Department as part of its investigation. A video recording of the interview was played for the jury and admitted into evidence as state's exhibit No. 9. Fengfeld stated that she has specialized training in conducting forensic interviews of child victims of sexual abuse. J.B. disclosed to Fengfeld that she was sexually abused by Woods when she was between the ages of eight and ten, that Woods stuck his fingers in her vagina, and that Woods forced her to perform fellatio on him until he ejaculated. (Tr. 317.) When Fengfeld asked if Woods touched her vagina with anything other than his hands, she replied that she did not want to say any more. The prosecutor asked Fengfeld if it would be uncommon for a victim to testify to additional acts at trial that she did not disclose during the forensic interview. Fengfeld responded that it is completely normal for a child victim to describe additional acts at a later time because child victims routinely make additional disclosures as time passes and they undergo therapy.

{¶ 9} At the close of the state's case, the state's exhibits were admitted into evidence, and defense counsel moved for acquittal pursuant to Crim.R. 29. The court granted the motion with respect to Counts 1, 2, 3, 5, 6, 7, 8, 9, 10, 11, 12, 17, 23, 24, 26, and 29. The state dismissed Count 13 prior to trial, and the jury found Woods guilty on the remaining 15 counts. The jury also made the furthermore findings in Counts 4, 31, and 32 that Woods purposely compelled the victim to submit by force

or threat of force, and in Counts 18, 25, 30, 31, and 32 that the victim was less than ten years of age at the time of the offense.

{¶ 10} The court subsequently heard oral arguments as to the sexually violent predator specifications, which were bifurcated and tried to the court. Based on arguments and the evidence presented at trial, the court concluded that Woods was likely to engage in one or more sexually violent offenses in the future and classified him as a sexually violent predator.

{¶ 11} The court sentenced Woods to 17 months in prison on Counts 19 and 20; ten years to life on Counts 4 and 18; four years to life on Counts 15, 16, 21, 22, and 27; 25 years to life on Count 28; and life without the possibility of parole on Counts 14, 25, 30, 31, and 32. The court ordered the prison terms imposed on Counts 4, 14, 15, 16, 21, 22, 25, 27, 28, 30, 31, and 32 to be served consecutive to one another for an aggregate life sentence without the possibility of parole, plus 55 years. Woods now appeals his convictions.

## II. Law and Analysis

### A. Sufficiency and Manifest Weight of the Evidence

{¶ 12} In the first assignment of error, Woods argues his convictions are against the manifest weight of the evidence. In the second assignment of error, he argues there is insufficient evidence to sustain his convictions. Although the terms "sufficiency" and "weight" of the evidence are "quantitatively and qualitatively different," we address these issues together because they are closely related, while

applying the distinct standards of review. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 13} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 14} In contrast to sufficiency, "weight of the evidence concerns the inclination of the greater amount of credible evidence." *Thompkins* at 387. While "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" *Id.*

{¶ 15} In a manifest weight of the evidence challenge, the reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of

justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

### 1. B.M.

{¶ 16} Woods was convicted of two counts of rape against B.M. in violation of R.C. 2907.02(A)(1)(b), as alleged in Counts 4 and 14 of the indictment and two counts of GSI against B.M. in violation of R.C. 2907.05(A)(4).

{¶ 17} R.C. 2907.02(A)(1)(b) provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." R.C. 2907.01(A) defines "sexual conduct" as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another."

{¶ 18} Counts 4 and 14 both alleged digital penetration, and Woods argues there is no evidence that he digitally penetrated B.M.'s vagina. However, B.M. testified that when her grandmother caught Woods molesting her on October 3, 2009, "he was rubbing his penis against [her] vagina." (Tr. 283.) This incident occurred near the basement stairs of her grandmother's house. (Tr. 281.) When asked what he did before he was caught, B.M. replied, "He was touching and sucking on my breasts, putting his finger in my vagina, and, you know, making himself happy." (Tr. 283.) Thus, despite Woods's claim to the contrary, there was evidence

that Woods put his finger in B.M.'s vagina on October 3, 2009, and this testimony is sufficient to establish the rape alleged in Count 14 of the indictment.

{¶ 19} B.M.'s testimony regarding the October 3, 2009 incident also establishes the two counts of GSI against B.M. in violation of R.C. 2907.05(A)(4), as alleged in Counts 15 and 16 of the indictment. R.C. 2907.05(A)(4) provides that "[n]o person shall have sexual contact with another, * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person." R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶ 20} As previously stated, B.M was born on December 24, 1996, and was 12 years old on October 3, 2009. As quoted above, B.M. testified that Woods touched and sucked her breasts and rubbed his penis on her vagina. Breasts and genitals are two different erogenous zones as defined by R.C. 2907.01(B). Woods's touching of those areas of B.M.'s body constituted two separate acts of GSI. Therefore, there was sufficient evidence to support these convictions.

{¶ 21} After describing the October 3, 2009 incident, the prosecutor asked B.M. about other prior incidents. B.M. replied that "he was doing it continuously for five years" and that he began molesting her when she was eight years old. (Tr. 283.) Although B.M. could not recall specific dates when she was assaulted, she testified that Woods often assaulted her "in his room." (Tr. 284.) When asked where

he touched her, B.M. stated that he touched her vagina and that he put "his finger in my vagina." (Tr. 280.) She also stated, "He would put his hands inside of my pants and just start playing with my vagina until it get wet enough until he did whatever he wanted to do[.]" (Tr. 294.) Thus, B.M.'s testimony provided sufficient evidence of rape as alleged in Count 4.

{¶ 22} Woods argues that B.M.'s testimony was not credible because her testimony was vague and lacking in corroboration. We disagree. She described a specific series of events that occurred on October 3, 2009. B.M. explained that Woods began by touching and sucking her breasts and putting his finger inside her vagina. He then rubbed his penis on her vagina. B.M. also explained that this particular incident occurred near the basement stairs rather than in a room in the house. She, therefore, provided specific details of the incident. Although her grandmother did not testify at trial to corroborate the specifics of her testimony, there was no evidence contradicting B.M.'s account. Moreover, B.M.'s sisters corroborated her claim that their grandmother caught Woods sexually assaulting her, and Woods, himself, admitted that the family ostracized him because he assaulted B.M.

{¶ 23} The rapes alleged in Count 4 and Count 14, and the acts of GSI alleged in Counts 15 and 16 are supported by competent, credible evidence.

## 2. C.C.

{¶ 24} Woods was convicted of one count of vaginal rape against C.C. in violation of R.C. 2907.02(A)(1)(b), as alleged in Count 18;[2] one count of attempted GSI[3] against C.C. in violation of R.C. 2907.05(A)(4) and 2923.02(A) as alleged in Count 19; and one count of importuning against C.C. in violation of R.C. 2907.07(A), as alleged in Count 20.

{¶ 25} As previously stated, R.C. 2907.02(A)(1)(b) governs rape and provides that "[n]o person shall engage in sexual conduct with another * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." R.C. 2907.01(A) defines "sexual conduct" as, among other things, "vaginal intercourse between a male and female[.]"

{¶ 26} In describing the rape, C.C. stated:

A: [A]ll I can remember is I was under some hot sheets, and he was trying to put his penis in me. I was telling him to stop because it hurt. And he didn't stop until his brother came into the door, and he stuck me under the covers * * *

* * *

Q: You said he tried to stick his penis in you?

A: It was hurting.

Q: Where was he putting it?

---

[2] Count 18 originally alleged digital penetration but the count was amended prior to trial to allege vaginal intercourse. (Tr. 43.)

[3] Count 19 originally alleged GSI and was amended to attempted GSI to conform to the evidence presented at trial. (Tr. 367.)

A: In my vagina area.

(Tr.264.) C.C. testified that Woods penetrated her vagina with his penis enough to cause pain. Although C.C. did not say exactly how old she was when the rape occurred, she testified that she did not realize that Woods's conduct constituted rape until she was 12 years old. (Tr. 265.) Her testimony, therefore, establishes that the rape occurred before she was 12 years old, and her testimony is sufficient to sustain Woods's conviction for rape of a child less than 13 years of age as alleged in Count 18.

{¶ 27} As previously stated, R.C. 2907.05(A)(4) governs gross sexual imposition and states that "[n]o person shall have sexual contact with another * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person." R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another," which includes, among other things, "the thigh, genitals, buttock, pubic region, * * * for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). R.C. 2923.02(A) governs attempt and states that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

{¶ 28} C.C. testified that when she was 11 or 12 years old, she and Woods were sitting with a blanket over their legs watching television when Woods attempted to touch her between her legs. She stated:

> But I was watching TV, it was getting like the sun was going down, and he put his hand — I probably had a dress on or something because he was trying to put his hands in between my legs, and my Uncle [ ] came in and was talking through the door and he stopped.

(Tr. 266.) C.C.'s testimony establishes that Woods was trying to touch C.C.'s genitals, pubic region, or thighs, all of which are erogenous areas as defined in R.C. 2907.01(B). Therefore, there was sufficient evidence to sustain Woods's attempted GSI conviction as alleged in Count 19.

{¶ 29} R.C. 2907.07(A) governs importuning and states that "[n]o person shall solicit a person who is less than thirteen years of age to engage in sexual activity with the offender, whether or not the offender knows the age of such person." C.C. testified that she was "maybe eight" when Woods solicited her to engage in sexual activity with him. She explained:

> I had to be like maybe eight. Not sure. I remember being at the doorway and he told me to come in and he had his stuff out — his penis out, and he was asking me to suck it, his penis.

C.C. was not sure that she was eight years old at the time of this incident. However, as previously stated, she realized the criminal nature of Woods's conduct at a later time when she was 12 years old. (Tr. 265.) Therefore, there was sufficient evidence that Woods solicited C.C. to engage in sexual activity with him when she was less than 13 years of age.

{¶ 30} Woods argues that C.C.'s testimony was not credible because she could not remember her exact age when Woods committed these acts against her. He also asserts that her vague timeline is inconsistent with the timing of other events. For example, she stated that the incidents occurred before her grandmother

was released from prison in 2001, but the indictment alleges that the offenses occurred in 2003 or 2004.

{¶ 31} "[M]any child victims are unable to remember exact dates and times, particularly where the crimes involved a repeated course of conduct over an extended period of time." *State v. Garner*, 8th Dist. Cuyahoga No. 102816, 2016-Ohio-2623, ¶ 52, citing *State v. Mundy*, 99 Ohio App.3d 275, 296, 650 N.E.2d 502 (2d Dist.1994). "'The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse.'" *Id.*, quoting *State v. Robinette*, 5th Dist. Morrow No. CA-652, 1987 Ohio App. LEXIS 5996, *8 (Feb. 27, 1987). Therefore, this court has held that because child victims of sexual abuse are often unable to recall the exact dates of abuse, "'reasonable allowances for inexact dates and times must be made.'" *State v. Williams*, 8th Dist. Cuyahoga No. 111654, 2023-Ohio 458, ¶ 20, quoting *Garner* at ¶ 52.

{¶ 32} C.C. was born in October 1995. (Tr. 257.) Therefore, she would have been six years old in October 2001, and eight years old in October 2003. She testified that the abuse began when she was "maybe eight," which is consistent with the dates alleged in the indictment. Moreover, she provided significant details about each incident and that consistency lends credibility to her testimony. We, therefore, cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.

### 3. D.D.

{¶ 33} Woods was convicted of two counts of GSI against D.D. in violation of R.C. 2907.05(A)(4), as alleged in Counts 21 and 22, and one count of rape against D.D. in violation of R.C. 2907.02(A)(1)(b), as alleged in Count 25. The rape charge included a furthermore finding that D.D. was under ten years of age at the time the rape was committed.

{¶ 34} In describing the GSI alleged in Count 21 and the rape alleged in Count 25, D.D. testified:

A: * * * He was the only one with a DS at the time, so we used to go in his room, play with his DS.

Q: That's a video game?

A: Yeah, it was new at this time, the flip one. * * * I would be sitting down, he would tell me to sit on his lap while playing a game. He would put his hand in my pants and rub my area. He did try to insert his hand one time, but it hurt really bad. * * *

* * *

Q: You said he stuck his hand down your pants?

A: Yes.

Q: Were you wearing underwear at the time?

A: Yes.

Q: Where was his hand in relation to your underwear?

A: They was in my underwear.

Q: What do you mean that he tried to stick his fingers in?

A: He would try to rub it and do it like this.

Q: Move his finger inside?

A:  Yeah, he would try to.

Q:  How did it feel when he did that?

A:  It kind of hurted [sic].

(Tr. 299.)  D.D. stated that Woods put his hand in her underwear and rubbed "her area." Although it is not clear if "her area" referred to her vagina or her pubic region, any area inside her underwear would qualify as an erogenous zone as defined by R.C. 2907.01(B).

{¶ 35} D.D. states that Woods "tried" to move his finger inside her vagina and that it hurt.  She did not feel pain when Woods rubbed the area outside her vagina. Therefore, it is reasonable to infer that D.D. experienced pain when Woods penetrated her vagina, even if only slightly.  As previously stated, the definition of "sexual conduct" for purposes of rape includes "the insertion, however slight, of any part of the body * * * into the vaginal or anal opening of another."  R.C. 2907.01(A). Therefore, D.D.'s testimony and hand gesture demonstrating the insertion is sufficient to establish the rape charge alleged in Count 25.

{¶ 36} With respect to the furthermore clause alleging that D.D. was less than ten years old, D.D. testified that she was born on March 31, 2001.  (Tr. 292.)  She further stated that Woods did not assault her after her grandmother caught him assaulting B.M. on October 3, 2009.  (Tr. 297.)  D.D. would have been eight years old in October 2009, and was, therefore, less than ten years old at the time of the rape.  (Tr. 299.)

{¶ 37} Regarding the second incident of GSI alleged in Count 22, D.D. testified that Woods would give her piggyback rides and that while she was on his back, he would "put his finger in my butt and like try to stick his finger in my butt crack and stuff." (Tr. 297.) A person's buttock is included in the definition of erogenous zone as defined by R.C. 2907.01(B). Therefore, there was sufficient evidence to support Woods's GSI conviction in Count 22.

{¶ 38} Woods argues that D.D.'s testimony was not credible because she was not sure of the timeline as when the incidents occurred and her testimony was not corroborated. However, a child witness's lack of dates or timelines, by themselves, does not render the testimony incredible. *Williams*, 8th Dist. Cuyahoga No. 111654, 2023-Ohio-458, ¶ 20. D.D. provided specific details about each of the incidents, and she confirmed that they happened when she was less than ten years old. Although Woods did not admit that he sexually assaulted D.D., he admitted in his interview with Det. Jackson that he gave D.D. piggyback rides, which partially corroborates her testimony. And since there is no evidence contradicting D.D.'s testimony, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that Woods's convictions must be reversed.

### 4. N.M.

{¶ 39} Woods was convicted of one count of GSI in violation of R.C. 2907.05(A)(4) against N.M. as alleged in Count 27 and one count of rape in violation of R.C. 2907.02(A)(1)(b) against N.M. as alleged in Count 28. Regarding the GSI

conviction, N.M testified that Woods put his hand on her vagina while she and her cousins' were playing a game of "store." She stated:

A: [O]ne of the times we was with all of my cousins on the first floor in the living room, we was playing like store or something. There was a cash register, we were all in line. We was like in front of each other. If he was in front of me, he would put his hand behind him and put his hand in my pants.

Q: When you say he put his hand in your pants, it sounds odd, was it between your pants and underwear?

A: On my clitoris.

Q: Okay. So he put his hand directly on your vagina?

A: Yes.

Q: What did he do when he put his hands there?

A: Rubbed it.

Q: Did he ever put his hand inside your vagina?

A: No.

Q: He just rubbed it?

A: Yes.

(Tr. 331.) N.M. testified that she was between eight and ten years old at the time of this incident. (Tr. 332.) Therefore, there was sufficient evidence to establish the GSI alleged in Count 27.

{¶ 40} With respect to the rape conviction, N.M. testified that she and Woods were sitting with a cover over their legs when Woods put his hand inside her underpants and rubbed her clitoris. (Tr. 332.) The prosecutor asked N.M. if Woods ever used his fingers to touch her "aside from rubbing," and she replied, "Not to my

recollection, no, no." Thereafter, the prosecutor asked additional questions for clarification:

> Q: [N.M.], I know some of these questions can be a little bit personal. When you say he rubbed your clitoris, was it at the top of your vagina, or did he ever go like in between the folds of the vagina?
>
> A: I believe he went in between.
>
> Q: I don't know. Can I demonstrate? Like, I'm sorry, you all. Probably like this, two or three fingers.
>
> Q: So two to three fingers he used in between the labial lips?
>
> A: Yes.

(Tr. 333-334.)

**{¶ 41}** Woods argues N.M.'s testimony was not credible because she confused her dates and could not remember any other specific incidents of abuse even though she stated that these events happened more than twice. But, again, a child witness's failure to recall specific dates or timelines, by itself, does mean her testimony is not credible. *Williams*, 8th Dist. Cuyahoga No. 111654, 2023-Ohio 458, at ¶ 20, citing *Garner* at ¶ 52. N.M. provided specific details about both incidents, which gives them credibility, and there is no evidence contradicting her testimony.

**{¶ 42}** Woods also argues that the evidence offered in support of digital penetration was not credible because N.M. initially denied there was any penetration, and she only changed her testimony when the prosecutor asked her additional questions for clarification. The state argues that N.M.'s initial denial that there was any penetration resulted from her lay-person understanding of the term "penetration," which differs from the legal definition. The legal definition only

requires evidence that the defendant penetrated the labia majora of the external female genitalia. Indeed, this court has held that "if the force of an object — like a finger — causes a victim's labia to spread, that is sufficient penetration to constitute "'sexual conduct'" under the statute; it is not necessary for an object to penetrate into the vagina." *State v. Sanchez-Sanchez*, 2022-Ohio-4080, 201 N.E.3d 323, ¶ 125 (8th Dist.), citing *State v. Roan*, 8th Dist. Cuyahoga No. 108917, 2020-Ohio-5179, ¶ 20 ("'[E]vidence of slight penetration, entering the vulva or labia, is sufficient to support a rape conviction.'"), quoting *State v. Falkenstein*, 8th Dist. Cuyahoga No. 83316, 2004-Ohio-2561, ¶ 16. *See also State v. Artis*, 6th Dist. Lucas No. L-19-1267, 2021-Ohio-2965, ¶ 97 ("[A]lthough perhaps medically imprecise[,] legally[] the vagina begins at the external genitalia, not some deeper internal structure."); *State v. Mack*, 11th Dist. Trumbull No. 2023-T-0029, 2023-Ohio-4374, ¶ 56, quoting *State v. Zamora*, 12th Dist. Clermont Nos. CA2022-10-060 and CA2022-11-071, 2023-Ohio-1847, ¶ 9 ("'[I]t is generally well established that penetration of the victim's "vaginal opening" has occurred where there was some forceful spreading of the external female genitalia, or vulva, which is comprised of lip-like folds of skin called the labia majora.'").

{¶ 43} N.M. testified that Woods's fingers penetrated her labia majora in response to the prosecutor's questions. She also demonstrated what occurred with her fingers in order to clarify her own testimony. In the absence of any contradictory evidence, we find no reason to disturb the jury's conclusion that N.M.'s testimony

was credible and satisfied the legal definition of penetration for purposes of R.C. 2907.01(A).

## 5. J.B.

{¶ 44} Woods was convicted of three counts of rape against J.B. in violation of R.C. 2907.01(A)(1)(b), as alleged in Counts 30, 31, and 32. All three counts included a furthermore clause that J.B. was less than ten years of age at the time the rapes were committed.

{¶ 45} J.B. was born on July 28, 2007, and she was 15 years old at the time of trial. (Tr. 304.) She testified that she was six or seven when Woods raped her. (Tr. 308.) She explained, "My mom was living upstairs with him. I had to sleep in the room with him. So I did. * * * He told me to take my clothes off, he locked the door, and started touching me." She further stated that Woods put his finger in her vagina, he put his penis in her vagina, and he put his penis in her mouth. (Tr. 308-309.) When the prosecutor asked if anything came out of Woods's penis, she replied "yes" and explained that it was "white" and "nasty," and she "spit it on the floor." (Tr. 310.) J.B.'s testimony established that Woods raped her three times in one incident; digital penetration, sexual intercourse, and fellatio.

{¶ 46} Woods argues that J.B.'s testimony was not credible because it lacked specificity and was not corroborated. However, J.B. explained the circumstances that allowed the rapes to occur; she had to sleep in his room. She also stated that he locked the door and told her to take her clothes off. Although he initially told her he would not hurt her, he later threatened to kill her if she screamed. (Tr. 308.) J.B.

also recalled that her mother was sleeping in the room next door and that she could not sleep the rest of the night after having been raped. She, therefore, provided many details in her testimony.

{¶ 47} J.B. also described some of the rapes to Fengfeld in the recorded interview that was played for the jury and admitted into evidence as state's exhibit No. 9. Although she did not describe all three rapes to Fengfeld at that time, Fengfeld explained that it is normal for child victims of sexual abuse to disclose more instances of abuse and more information as time passes. But there was nothing inconsistent between J.B.'s trial testimony and her interview with Fengfeld other than that she provided some additional information at the time of trial. Therefore, J.B.'s testimony was competent and credible.

{¶ 48} The first and second assignments of error are sustained insofar as we find insufficient evidence to support the rape conviction in Count 4 but find sufficient evidence to support the lesser-included offense of GSI. The assigned errors are overruled with respect to all other counts.

## B. Sexually Violent Predator

{¶ 49} In the third assignment of error, Woods argues the trial court erred in finding him guilty on the sexually violent predator specifications attendant to his rape convictions in Counts 4, 14, 18, 25, 28, 30, 31, and 32, and his GSI convictions in Counts 15, 16, 21, 22, and 27.

{¶ 50} R.C. 2971.01(H)(1), defines a "sexually violent predator" as "a person who, on or after January 1, 1997, commits a sexually-violent offense and is likely to engage in the future in one or more sexually-violent offenses."

{¶ 51} The state concedes that the sexually violent predator specification could not be applied to Counts 18, 19, or 20, because they occurred before April 28, 2005, and there is no evidence that Woods had a prior sexual-assault conviction. The General Assembly modified R.C. 2971.01(H)(1) in 2005, replacing the phrase "has been convicted of or pleaded guilty to committing" with the word "commits" such that after April 28, 2005, it was no longer necessary for a sex offender to have a prior conviction of a sexually violent offense in order to satisfy the elements necessary to establish a sexually violent predator specification. *State v. Frierson*, 2019-Ohio-317, 129 N.E.3d 1004, ¶ 10 (8th Dist.).

{¶ 52} The trial court found Woods guilty of the sexually violent predator specification on Count 18, but not on Counts 19 or 20. Count 18 alleges that Woods committed rape sometime between June 1, 2003, and September 30, 2004. In the absence of any evidence that Woods had previously been found guilty of a sexually violent offense, the trial court erred in finding Woods guilty on the specification attendant to Count 18.

{¶ 53} With respect to the remaining counts, which involve Woods's conduct after April 28, 2005, Woods argues the trial court erred in finding that Woods is likely to commit a sexually violent offense in the future because there is no evidence that he has committed a sexually violent offense since he raped J.B. in 2015. In

determining whether a convicted sex offender is a sexually violent predator, R.C.

2971.01(H)(2) directs the factfinder to consider the following factors:

> (a) The person has been convicted two or more times, in separate criminal actions, of a sexually oriented offense or a child-victim oriented offense. For purposes of this division, convictions that result from or are connected with the same act or result from offenses committed at the same time are one conviction, and a conviction set aside pursuant to law is not a conviction.
>
> (b) The person has a documented history from childhood, into the juvenile developmental years, that exhibits sexually deviant behavior.
>
> (c) Available information or evidence suggests that the person chronically commits offenses with a sexual motivation.
>
> (d) The person has committed one or more offenses in which the person has tortured or engaged in ritualistic acts with one or more victims.
>
> (e) The person has committed one or more offenses in which one or more victims were physically harmed to the degree that the particular victim s life was in jeopardy.
>
> (f) Any other relevant evidence.

"'[T]here is no requirement that all of the factors *** be proved in order to find a person to be a sexually violent predator.'" *State v. Sopko*, 8th Dist. Cuyahoga No. 90743, 2009-Ohio-140, ¶ 48, quoting *State v. Williams*, 8th Dist. Cuyahoga No. 78999, 2001 Ohio App. LEXIS 4188 (Sept. 20, 2001). Rather, "'any of the factors may be considered as evidence that an individual is likely to engage in one or more sexually violent offenses.'" *Id.*, quoting *Williams*.

{¶ 54} We review the trial court's finding on the sexually violent predator specification under a manifest-weight-of-the-evidence standard. *See, e.g., State v. Belle*, 8th Dist. Cuyahoga Nos. 107046 and 107300, 2019-Ohio-787, ¶ 33-37; *State*

*v. Eick*, 5th Dist. Tuscarawas No. 2022 AP 09 0033, 2023-Ohio-4144, ¶ 25-36; *State v. Horn*, 2018-Ohio-779, 108 N.E.3d 158 (6th Dist.).

{¶ 55} The court found that Woods was a sexually violent predator pursuant to R.C. 2971.01(H)(2)(c), because it found that Woods "chronically commits offenses with sexual motivation as well as other relevant evidence." (Tr. 472.) The evidence presented at trial showed that Woods repeatedly raped and assaulted B.M., D.D., and C.C. before he was caught by the victims' grandmother on October 3, 2009. Thereafter, Woods did not stop raping and assaulting young girls. To the contrary, he raped and assaulted N.M. and J.B. The evidence showed that Woods raped and assaulted these victims over a period of 12 years. Woods, himself, admitted to Det. Jackson in the recorded interview that he is a "sex addict" and that he was "trying to change." (State's exhibit No. 8.) He also admitted that his family knows "[he's] a predator." (State's exhibit No. 8.) Therefore, the court's findings that Woods chronically commits offenses with sexual motivation, that he is likely to engage in a sexually violent offense in the future, and that he is a sexually violent predator is supported by the manifest weight of the evidence.

{¶ 56} The third assignment of error is sustained as to Count 18 and overruled as to all other counts.

{¶ 57} The trial court's judgment is affirmed except for the trial court's guilty finding on the sexually violent predator specification in Count 18, which is vacated.

It is ordered that appellees and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
SEAN C. GALLAGHER, J., CONCUR